***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On September 2, 2003, the plaintiff was an employee of defendant-employer.
3. The carrier on the risk in this claim is PMA Insurance Group.
4. The plaintiff's average weekly wage is $451.51, which yields a compensation rate of $301.02.
5. Plaintiff alleges that on September 2, 2003, he sustained a disabling middle and low back injury by accident arising out of and in the course of his employment by defendant. Defendants dispute that a specific traumatic incident occurred on September 2, 2003, which resulted in employee's back condition.
6. Plaintiff seeks to be awarded total disability compensation benefits beginning December 24, 2003, and continuing.
7. Plaintiff does not seek to be awarded any medical compensation for treatment of any depression secondary to his back injury.
8. Plaintiff last worked at defendant-employer on December 23, 2003.
9. The following documentary evidence was admitted by stipulation:
a. Commission Proceedings, consisting of 14 pages (Stipulated Ex. #1);
b. Plaintiff's medical records, consisting of 44 pages (Stipulated Ex. #2); and
c. Dr. O. Del Curling's independent medical evaluation report dated September 7, 2004.
 ***********
Based upon all the competent evidence adduced from the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 47 years old and had completed high school. Plaintiff worked primarily as a laborer since 1973.
2. In September 2000, the defendant-employer hired plaintiff to work at its Yadkin County Manufacturing plant as a shear operator, performing heavy physical labor.
3. On January 30, 2001, plaintiff tripped over a pallet at work and fell, injuring his low back, which injury had resolved by the end of February 2001. By then, plaintiff was laid off from work.
4. On March 19, 2001, defendant-employer re-hired plaintiff to work as a press-brake operator on third shift. Plaintiff's normal and usual duties involved constant standing, frequent bending and reaching, and lifting objects weighing up to about 30 pounds. He also operated a forklift.
5. On the morning of September 2, 2003, plaintiff was at work for defendant-employer, standing in front of, and at a right angle to, a die holder; that is, the outside of his left arm and shoulder were next to the die holder. With his right hand and one arm extended at about shoulder height, he was pulling on the handle of an Allen wrench (an L-shaped wrench) to loosen a bolt head on the front of the die holder. The bolt unexpectedly came loose, and the wrench slipped out of the head of the bolt, causing plaintiff to lose his balance and suddenly to rapidly and severely twist his middle and low back areas to his right, beyond ninety degrees. Plaintiff immediately experienced severe pain in his right upper back between his shoulder blades, in his middle back, and in his lower back.
6. Plaintiff immediately reported his accident and injury to the defendant-employer, and plaintiff's injury was recorded as being a strained upper and lower back.
7. That night, plaintiff sought treatment at Hoots Memorial Hospital emergency room where the physician's assistant diagnosed a right posterior thoracic muscle strain, and prescribed a right arm sling.
8. On September 5, 2003, plaintiff saw company physician, Dr. Jerry Ziglar, who prescribed physical therapy.
9. In the period from September 8 through September 11, 2003, plaintiff participated in physical therapy treatments with therapist Jim Hunt. Following examination and testing, Mr. Hunt diagnosed plaintiff's primary problem as a right lumbar or low back muscle strain with muscle guarding, for which he treated plaintiff with low back hot/cold packs and low back electrical stimulation. These treatments ended because defendants refused to authorize any more therapy.
10. In September 2003, plaintiff saw Dr. Ziglar's physician's assistant, Carolyn Moench, who limited plaintiff to primarily left-handed work duties with no bending or lifting over 20 pounds.
11. On September 26, 2003, plaintiff returned to Dr. Ziglar who felt plaintiff had a muscle strain that would resolve in time, and he released plaintiff from his care.
12. In late September 2003, plaintiff returned to his regular pre-injury duties as a press-brake operator.
13. In the period following his accident into late September 2003, plaintiff continued to have constant middle back pain that was greater than his constant low back pain resulting from the accident.
14. By about the middle of October 2003, plaintiff's middle back pain improved but his low back pain grew worse in light of his return to normal duties, which required frequent bending and lifting. Plaintiff's low back injury from his accident failed to heal and grew worse over time. Plaintiff also developed pain in his right leg, which is the leg he used to operate the press brake.
15. In October 2003, plaintiff complained of low back pain to his third shift supervisor Marvin Hart, who noticed plaintiff walking with a limp and holding his low back area with his hand, as well as having trouble getting off and on the forklift due to low back pain.
16. In November 2003, plaintiff's low back pain continued to worsen.
17. In late November into early December 2003, plaintiff missed about three weeks of work due to depression unrelated to his accident.
18. In early December, plaintiff returned to work duties, but his low back pain continued to worsen, which led him to seek medical attention from his family physician, Dr. Neumark.
19. On December 17, 2003, plaintiff saw Dr. Neumark, complaining of lower back pain that had gotten worse over the last two months following a pulled muscle injury at work. At the time, plaintiff informed Dr. Neumark that his pain medications, Darvocet and Vicodin, were not working. Dr. Neumark prescribed a lumbar MRI.
20. On December 19, 2003, radiologist, Paul J. Beerman, interpreted plaintiff's lumbar MRI to reveal, at the L5-S1 level of his spine, a moderate-sized central protrusion compressing the anterior aspect of plaintiff's thecal sac and abutting both S1 nerve roots, along with a mild non-compressive central protrusion at the L4-5 level of his spine.
21. By December 24, 2003, plaintiff's low back pain had become so severe that he was unable to work in any capacity.
22. Plaintiff's wife, a nurse at Forsyth Medical Center, then requested neurosurgeon, Dr. William R. Brown, Jr. to review plaintiff's MRI and to see plaintiff on an emergency basis.
23. On December 26, 2003, Dr. Brown reviewed the MRI and met briefly with plaintiff. Dr. Brown felt plaintiff had a ruptured disc and degenerative disc disease at L5-S1 and admitted plaintiff to the hospital.
24. On December 31, 2003, Dr. Brown performed a decompressive laminectomy at the L5-S1 level of plaintiff's spine and found very tight bilateral recess stenosis and a calcified bulging disc. Bilateral recess stenosis is where both sides of the spinal canal (as opposed to the central part) become narrow or constricted and pinch the thecal sac, which holds the spinal fluid that surrounds the spinal cord. Dr. Brown opined that plaintiff's pre-existing calcified disc condition and bilateral spinal stenosis condition made him more susceptible to the effects of the twisting low back injury on September 2, 2003. Dr. Brown opined that plaintiff's injury on September 2, 2003, was a significant causal factor in his low back pain and in his inability to return to work.
25. On September 7, 2004, plaintiff presented to Dr. O. Del Curling, Jr., a neurosurgeon, for an independent medical evaluation that lasted approximately 90 minutes. Dr. Curling opined that the weight of the evidence that he reviewed did not support a clear causal link between the reported work injury on September 2, 2003, and the subsequent onset of low back and bilateral leg symptoms.
26. Plaintiff's low back pain problem began on September 2, 2003, following his twisting injury by accident. Plaintiff injured the middle or thoracic area of his back when he twisted unexpectedly to his right. This middle back injury resulted in no disability. However, plaintiff's twisting injury by accident caused some swelling and produced a change in the diameter of his spinal canal, which caused his condition to become symptomatic, characterized by low back pain that failed to heal, but rather gradually worsened.
27. Plaintiff's low back pain has been continuous since his accident, slowly worsening in October and November 2003, and finally becoming disabling on December 24, 2003, and continuing thereafter.
28. Plaintiff's September 2, 2003, low back injury by accident was a significant causal factor in his low back pain problem beginning on September 2, 2003, and continuing thereafter.
29. Plaintiff's twisting low back injury by accident aggravated his pre-existing non-symptomatic lumbar spinal stenosis condition at L5-S1 and his non-symptomatic degenerative disc disease condition also at the L5-S1 level of his spine, making these conditions become symptomatic on September 2, 2003, characterized by low back pain thereafter. Plaintiff's condition gradually became severe leading to his becoming totally disabled on December 24, 2003, and to the subsequent surgery performed by Dr. Brown on December 31, 2003.
30. The Full Commission gives more weight to the opinion of Dr. Brown than to Dr. Curling because of the extended period of treatment provided by Dr. Brown and the fact that Dr. Brown also performed plaintiff's surgery, as opposed to Dr. Curling's one-time evaluation.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On September 2, 2003, plaintiff sustained an injury by accident to his back as a result of a specific traumatic incident of the work assigned, arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's average weekly wage was $451.51, which yields a compensation rate of $301.02. N.C. Gen. Stat. § 97-2(5).
3. As a result of his compensable injury by accident, plaintiff is entitled to payment of total disability compensation benefits payable at the rate of $301.02 per week beginning on December 24, 2003, and continuing each week thereafter until further Order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
4. As a result of his compensable injury by accident, plaintiff has incurred and continues to incur expenses for medical treatment that is necessary to effect a cure, provide relief or lessen his period of disability. The plaintiff is entitled to payment of said expenses by defendants. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney's fee approved herein, defendants shall pay total disability compensation benefits to plaintiff at the rate of $301.02 per week beginning December 24, 2003 and continuing each week thereafter until further Order of the Industrial Commission. All compensation that has accrued shall be paid in one lump sum, also subject to the attorney's fee hereinafter approved.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury by accident on September 2, 2003, for so long as such evaluations, examinations and treatments may be reasonably required to effect a cure or give relief or will tend to lessen the period of plaintiff's disability.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded to plaintiff in Paragraph 1 of this Award is hereby approved for plaintiff's counsel and shall be deducted from sums due plaintiff and paid directly to plaintiff's counsel. Twenty-five percent (25%) of the lump sum amount due plaintiff shall be deducted from said amount and paid directly to plaintiff's counsel in one lump sum; thereafter, defendants shall pay to plaintiff's counsel every fourth check due the plaintiff.
4. Defendants shall pay the costs.
This the ___ day of October 2005.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER